### William Elam, Appellee, v. Majestic Coal & Coke Company, Appellant.

1. MINES AND MINERS—*what evidence properly excluded in action charging wilful violation.* Held, that it was not error to exclude a statement of the plaintiff as follows: "It was on account of my own negligence."

2. EVIDENCE—*what competent upon question of interest.* For the purpose of testing the question as to whether or not a witness is interested in the controversy, it is proper to ask him upon cross-examination as to whether or not it was not a fact that he was requested to see if he could not effect a compromise of the litigation.

3. PLEADING—*what averment essential to recover medical expenses incurred in connection with seeking to effect cure.* Expenses in-

curred in seeking to effect a cure of personal injuries sustained cannot be made a part of the recovery unless claimed by proper averment in the declaration.

4. AMENDMENTS AND JEOFAILS—*what does not constitute amendment.* The mere fact that the court grants leave to make an amendment does not constitute the amendment; the leave must be availed of and the appropriate paper filed.

5. INSTRUCTIONS—*what phrase used in pertaining to damages improper.* If only compensatory damages may be recovered in an action the phrase "entitled to" is improper.

6. INSTRUCTIONS—*when upon question of damages improper.* It is never proper for the court to tell the jury in a case where exemplary damages cannot be awarded that they should give such damages to the plaintiff as they believe from the evidence he is entitled to.

7. DAMAGES—*what does not sustain averment of expenditures.* An averment in a declaration that plaintiff expended divers sums of money for medical attention is not supported by proof that he incurred or became liable for such expense.

8. TRIAL—*when remarks of counsel will not reverse.* Notwithstanding remarks of counsel made in argument to the jury are improper they will not result in a reversal where an objection was made and promptly and positively sustained by the court. Remarks of counsel, though improper, to constitute ground for reversal, must have resulted in apparent prejudice to the opposite party.

9. APPEALS AND ERRORS—*of what complaint cannot be made.* A party cannot complain of error in his own favor.

Action in case for personal injuries. Appeal from the Circuit Court of Perry county; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the October term, 1909. Affirmed upon remittitur. Opinion filed April 9, 1910.

DAN MCGLYNN, for appellant.

W. P. LIGHTFOOT and W. O. EDWARDS, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

William Elam, appellee, filed a declaration in case against the Majestic Coal and Coke Company to the May term, 1908, of the Perry County Circuit Court, claiming damages for personal injuries to him alleged to have been caused by the wilful violation of section 16 of the Mines and Miners Act. The amended decla-

ration contains two counts, the first of which charges, that on May 13, 1908, plaintiff was employed in appellant's coal mine near DuQuoin, Illinois, as a miner in room No. 19 of entry I, on west side of said mine; that on said day and prior thereto, while plaintiff was mining coal in said room for defendant, it became necessary that the roof of said room be propped; that on said day and prior thereto, plaintiff made a demand to defendant through Frank Scott, a driver of said defendant, and through William Stockton, defendant's pit-foreman, to provide plaintiff a sufficient supply of props by delivering said props at said room on the miners' cars to enable the plaintiff properly to prop and secure the roof of said room; that the defendant, not regarding its duty in that behalf, wilfully failed to deliver said props after being so demanded; that by reason of defendant's said wilful failure, the plaintiff was on said day, while mining coal in said room, severely injured by coal and slate falling from said roof on to him, thereby crushing and breaking the bones in his arms and leg and otherwise bruising and maiming him in his back and limbs, etc. The second count charges substantially the same grounds for recovery in somewhat different language, naming the *ad damnum* at $10,000. The general issue was pleaded to the whole of the declaration. At the close of all the evidence the court denied. appellant's motion for peremptory instruction and after overruling appellant's motion for a new trial, entered judgment against the defendant in favor of plaintiff for $1,000, from which judgment Majestic Coal and Coke Company appeals.

Appellant challenges the sufficiency of the evidence to sustain the judgment below for two reasons (1) that the preponderance of the evidence does not show that any demand was made of appellant by appellee for props; and (2) that if such a demand was made the evidence shows that appellee had all the props that were needed for propping his room. There is no contention that the other allegations of the declaration

are not sustained by the evidence. The testimony of the appellee is in substance that he and his ''buddy'' or co-worker, were mining the top coal in said room 19 which had been driven about two hundred and fifty feet from the entry, all the coal being taken therefrom except the top seam of the thickness of about three feet; that this top seam was propped up by six foot props, as the lower seam of coal had been mined out; that to mine the top seam they began at the face of this room and were mining towards the entry, by driving holes in the coal in which shots were placed by appellee and his ''buddy'', which were fired by the shot-firer at the close of the day; that before they left of an evening appellee and his buddy would knock out the six foot props under the top coal that was likely to be blown down by shots and pile them forward by the track to preserve it from falling coal; that as the top coal was shot down they needed ten foot props to prop the slate roof over the top coal to keep it from falling on them; that on the morning of May 12, 1908, they had no ten foot props and were in need of them, and on that day he and his buddy made a demand on the driver, Frank Scott, for ten foot props, and that the driver said all right; but when the driver came back he told them that he asked the pit-boss, Stockton, for the props, and that Stockton said there ''wasn't any down, and that he couldn't stop hoisting coal to get them down.'' Appellee is entirely corroborated in this evidence by his buddy, G. A. Weaver, and also by the driver. The appellee also testified that about noon of the next day, May 13th, he went in person to the bottom and demanded props of Stockton, pit boss. He is corroborated in this statement by his buddy, as to the fact that he went to the bottom about that time. Stockton admitted that appellee talked with him at the bottom that day, but denies absolutely that appellee made any such demand, or that the driver on the day before made any demand whatever for props. Appellant seeks to further off-set this evidence of plaintiff

by showing he had no need of ten foot props, and that if he did need them he had plenty of them close at hand. Four or five witnesses of appellant state that it was not slate that fell on appellee, but that it was top coal only and which could only have been propped with six foot props. They say they examined the place where he was hurt, and that there was no slate on the floor there, and that only top coal fell on him. They made this examination sometime after the injury, generally the next day, and only knew the place by hearsay. Most all of them admit, too, that there was slate next to this coal and towards the face of this room. Appellee and his buddy both swore positively that it was slate with some coal that fell on him, and that it was the slate they wanted to prop with the ten foot props. They are also corroborated by one of defendant's witnesses, Dexter Porter, who was driver for appellant the day appellee was injured, who says he was in appellee's room that day when he and appellee were talking about some slate; that appellee then picked up a pick and was sounding some slate; "I said that is kinda loose; he was sounding some slate there over his head; I told him it was dangerous, that he had better work on the edge of the coal; he said that is dangerous; I said, yes, that is checked. I took his car and went on. I don't remember as I told him there he had better prop it or not. I believe I said you ought to have some props under it if you can't get that coal that is down. He made no reply." This is strong evidence, conclusive if true, that there was a dangerous condition in the slate on the day he was injured. Appellant's witnesses testify to the room there being smooth and nice with no dangerous conditions there next day after the injury. The dangerous slate spoken of then by appellant's witness, Porter, must have already fallen on appellee before the roof got into this good condition spoken of by appellant's witnesses. It is insisted by appellant that the fact that appellee made no demand on Dexter, the driver,

the day of appellee's injury, who is the customary servant of whom props are demanded there, that this is good evidence he made no demand for props of any one at all; but it will be noted that if the testimony of appellee and his "buddy" and of Scott, the driver of the day before, is true, that Stockton had informed them there were no ten foot props in the mine and that he would not stop hoisting to get them down. This fact furnishes a strong reason for appellee going then to Stockton in person for these props, taken in connection with his knowledge that he was in danger of slate falling on him and had been so warned. As to the claim that appellee already had plenty of ten foot props, the evidence shows that if they were in the mine at all, they were in the cross cuts between rooms 18 and 19, and 19 and 20, and between the dangerous slate in question and the face of the room. Besides if they were there the driver, the appellee and his buddy had no knowledge of their being there and were not informed of it when demand was made for props, if it was made. The statute provides that the mine owner "shall always provide a sufficient supply of props * * * delivered on the miner's car at the usual place when demanded, as nearly as possible, in suitable lengths and dimensions for the securing of the roof of the miners." The miners are not required to hunt in cross cuts or other portions of the mine where they are not at work, for props, nor to take notice of the fact that there are props in such places for use. The Statute requires the operator to deliver them at the usual place on demand, and those props were not at such usual place, or even in their rooms, if we understand the evidence. Considering the case as a whole we are of the opinion that it is for the jury to decide these questions of fact, and we cannot say that the jury were not warranted in finding that the evidence preponderated in favor of appellee.

Dr. Gillis' evidence discloses the fact that the coal company sent him to treat appellee when he was in-

jured; that he did a great deal of work for the appellant, and he admitted that he advised the appellee to settle his claim with appellant. He also testified as witness for appellant that he had no interest in this law suit. For the purpose then of simply testing the question of whether or not he was an interested witness, or rather as tending to show that he was somewhat interested in the suit, it was proper for appellee's counsel on cross examination to ask him if it was a fact that appellant requested him to see if he couldn't get him to compromise or settle this suit. The examination extended no further and it was not error to permit it. Neither was it error to exclude the mere statement of appellee that "it (the injury) was on account of my own negligence." Unless the statement continued into details by the witness, showing or tending to show that appellant was not liable for the injury, it was properly excluded, as contributory negligence is not a defense to this character of actions. Carterville Coal Co. v. Abbott, 181 Ill. 495; Henrietta Coal Co. v. Martin, 221 Ill. 470.

Appellant's objection, however, to appellee's evidence as to the amount of expenses incurred for medical attention should have been sustained by the court. There is no averment in the declaration that appellee incurred or became liable for any such expenses. An averment in a declaration that plaintiff expended divers sums of money for medical attention is not supported by proof that he incurred or became liable for such expense. Gammon v. Havelock, 40 Ill. App. 268; B. & O. S. W. Ry. Co. v. Schell, 122 Ill. App. 348.

It is true that appellee obtained leave to amend his declaration so that it would aver that he incurred or became liable for such expenses, but the amendment was never in fact made. An order of court granting leave to amend is not equivalent to the making of such amendment, and it was error in the court to allow such evidence until the amendment was in fact made, as appellant duly objected to the same and has preserved

its exceptions to such ruling. Condon v. Schoenfeld, 214 Ill. 226; Roth v. Burnham, 126 Ill. App. 223.

Two objections are raised by appellant to the only instruction offered by appellee, which concludes thus, "then in that case you should find the issues for the plaintiff, and assess his damages at such sum as you may be satisfied from the evidence he is entitled to." The particular objection raised to this instruction is as to the use of the word "satisfied." Three authorities are cited to the effect that by the use of such word too high a degree of proof was required for appellee to sustain his case, to-wit: Albrecht v. Ward, 91 Ill. App. 38; Ruff v. Jarrett, 94 Ill. 475; Rolfe v. Rich, 149 Ill. 436.

It has many times been decided that a party cannot complain of error in his favor. See last case cited. Appellant also complains of this instruction because it tells the jury that if they find from the preponderance of the evidence that appellee ordered props, and that defendant failed to furnish them, and that appellee was injured as a consequence thereof, then appellant would be liable, without requiring them further to find that appellee did not already have on hand a sufficient supply of props at the time. In other words the objection is that the instruction directs a verdict without requiring a finding of said material fact. We do not think the instruction when read as a whole is subject to that objection. If there be any doubt about the jury being misled thereby when considered alone there can be none at all when considered with appellee's second instruction which told the jury in substance that if they believe from the evidence that there was on hand in his room available for immediate use props in sufficient quantities and in proper lengths, and that he neglected to use them in proping his roof that then they should find the defendant not guilty. We have already discussed the facts bearing on this question as an additional reason why appellant was not prejudiced by this instruction. The word "entitle"

ought to have been stricken out of this instruction, and the word "sustained" substituted therefor. It is never proper for a court to tell a jury in a case like this that they should give such damages to the plaintiff as they believe from the evidence he is "entitled to," where only compensatory damages are recoverable. Such words may be used where exemplary damages may be recovered provided the instruction is otherwise properly worded. But as the amount of damages in this case was exceedingly small for the injury, the appellant was not prejudiced thereby.

The remarks of counsel for appellee "who is Stockton? He is in the employ of this company; he draws a big salary, and who is interested—," were improper because there was no evidence in this record that he drew a salary, large or small. These words should not have been used, and where there is a well-grounded belief that a party may have benefited himself or his client by such unfair means, it will not be the policy of this court in any case to allow the judgment to stand. Legitimate and fair argument only looks to the law and the evidence for its foundation. After the prompt and positive action of the court in stopping counsel in his improper remarks upon objections made thereto, we find no evidence in this record that they had any effect upon the jury, unless that evidence be the smallness of the verdict rendered for appellee.

But for the error already indicated in admitting improper evidence as to the incurring of expenses for medical services, the judgment will have to be reversed and the cause remanded for a new trial; and it is so reversed and so remanded, unless the appellee, as he has indicated a willingness to do, shall within fifteen days from the filing of this opinion enter a *remittitur* herein for the sum of one hundred and ten dollars, the amount proved for such services, and if he so does it will be affirmed.

*Affirmed upon remittitur filed.*